

02/24/2009

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VERNA KAY HERMAN | § | Case No. 02-64085 |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JACKSON LAW OFFICE, P.C., | § | |
| GARY DEAN JACKSON, and | § | |
| GLORIA A. JACKSON | § | |
| | § | |
| Plaintiffs | § | Adversary No. 07-6003 |
| | § | |
| v. | § | |
| | § | |
| VERNA KAY HERMAN | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>[1]

This matter is before the Court to consider the Complaint Objecting to Discharge

of Debtor filed by the Jackson Law Office, P.C., Gary Dean Jackson, and Gloria Ann

Jackson (the "Jacksons") through which they seek to deny the entry of a Chapter 7

discharge in favor of the Debtor, Verna Kay Herman (hereinafter "the Debtor" or

"Herman"), pursuant to 11 U.S.C. §727(a)(2), (a)(4), (a)(5), (a)(6), and/or (a)(7). At the

conclusion of the trial, the Court took the matter under advisement. The following

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

memorandum of decision disposes of all issues before the Court.[2]

## **Background**[3]

The history of this tortured case comes to a close with this adversary

proceeding wherein the Jacksons, as holders of a state court judgment against the Debtor,

seek to deny the Chapter 7 discharge sought by that Debtor, Verna Kay Herman, under

various subsections of §727.  The Jacksons became creditors of Herman based upon a

judgment issued in their favor by the 3rd Judicial District Court of Anderson County,

Texas, for unpaid attorney's fees owed by Herman to Mr. Jackson based upon his

previous representation of Herman during a divorce proceeding.  That Anderson County

case began in 1996 and the original judgment was issued in favor of the Jacksons in 1998.

That judgment was subsequently modified after a state appellate court added an additional

$5,000 to the judgment amount and remanded the action back to state court for

adjudication of an additional issue.  The remanded action was awaiting a new trial when,

on October 11, 2002, the Jacksons filed a non-suit as to the only issue remaining in

dispute.

On November 12, 2002, the District Clerk of Anderson County, Texas, issued a

writ of execution on the state court judgment which was delivered on that same date to

---

[2]  This Court has jurisdiction to consider the Plaintiffs' Complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  The Court has authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (I), and (O).

[3]  The agreed facts set forth by the parties in the Pre-Trial Order [dkt #23] are incorporated herein by reference as if fully set forth.

Dennis Taylor, Constable of Precinct No. 5 in Smith County, Texas, headquartered in Lindale. It directed him to satisfy the judgment amount of $81,349.73 from Herman's non-exempt property if located.[4] Constable Taylor and his deputy, Clifford Robison, served the writ upon Herman on November 12, 2002 at her 82-acre residence on County Road 431 outside of Lindale. In response to the constable's inquiry regarding available assets, Herman confirmed her exemption claim as to her CR 431 residence and asserted that she had no cash or other non-exempt assets in her possession at her home.[5]

However, just prior to the visit by the constable on November 12, she did have money in the bank — money that she suddenly felt the need to spend. On Friday, November 8, 2002, Herman wrote a check on her Bank of America checking account for cash in the amount of $4,000.[6] She explained at trial that she had used the cash to pay for the construction of a sidewalk and steps at her home. Herman stated that her non-debtor spouse directed the deal and that she could not identify the contractor except as "Juan."[7]

---

[4] See Plaintiffs' Ex. 8. As shown in the writ return, the $81,349.73 owed by the Debtor to the Defendants included the $5,000.00 joint and several obligation shared between the Debtor and the other two state court defendants. When R.A. Moreau satisfied his obligation by paying the $7,646.50 to the Defendants on November 13, 2002, the amount owed by the Debtor decreased as if she had actually paid this amount.

[5] The constable eventually seized and sold four tracts of non-exempt real property owned by Herman for which the aggregate sum of $30,000 was applied to the judgment indebtedness. The parties generally agree that, after application of the sales proceeds, the judgment indebtedness owed by Herman to the Jacksons totals at least $47,794.44. *See* Plaintiffs' Ex. 9 and section III, ¶ 8 of the Joint Pre-Trial Order.

[6] Plaintiffs' Ex. 63 at p. 70.

[7] Don Herman, the non-debtor spouse, actually testified that he could not remember the name of the contractor either.

-3-

She produced no written proposal and stated that she paid cash "in order to get a better deal," although there is no evidence that alternative price structures were discussed. The record does not establish when the sidewalk work was actually performed. Further, in spite of the fact that she would have no record of a cash payment, Herman received no receipt for the payment of the $4,000.

On the next available banking day, Tuesday, November 12, 2002,[8] and the very day that the constable would later appear at her home with the writ of execution, Herman withdrew another $9,000 in cash from her checking account.[9] She testified that this expenditure was for a new asphalt driveway to her home. That construction was based upon an original $5,000 written proposal which Herman testified was expanded to encompass additional work.[10] Though Herman stated that the November 12th payment had occurred after completion of the work, nothing in the record corroborates that testimony. There is no written evidence of the expansion of the $5,000 proposal and, again, Herman did not request, nor did she receive, any receipt to evidence her delivery of $9,000 in cash to the contractor.

Less than three weeks later, on December 3, 2002, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. After two extensions of time

---

[8]  The Court takes judicial notice that the next business day, Monday, November 11, 2002, was a banking holiday (Veterans' Day).

[9]  Plaintiffs' Ex. 63 at p. 72.

[10]  Defendant's Ex. B.

were granted by the Court, Herman filed her schedules on January 21, 2003.  She originally listed cash of $25.00 and checking account amounts totaling $2,361.52.  The original schedules and statement of financial affairs failed to reference any transfer of the aggregate $13,000 to the respective contractors for Herman's homestead improvements three weeks prior to the filing.[11] After the change of attorneys, the Debtor amended her schedules.[12]  The checking account total was lowered to $292.95.

The underlying bankruptcy case has been as contentious as the pre-petition period between these parties.  The Jacksons and Herman have fought exemption battles regarding household furnishings and minutiae such as DVD movies.  The Jacksons successfully defended the validity of their judgment liens against an adversary challenge by Herman.[13]  The parties litigated the validity of equitable liens asserted against the Debtor's homestead arising from a 1994 divorce decree.[14]  More relevant to the current dispute was the litigation to determine whether certain assets constituted property of the Debtor's bankruptcy estate.[15]  Though certain decisions in that adversary were adverse to

---

[11]  See Plaintiffs' Ex. 2 and 3.

[12]  See Plaintiffs' Ex. 5.  But Herman did not amend her Statement of Financial Affairs.

[13]  See Adv. Proc. 03-6011 and judgment entered thereon (dkt #26) on April 1, 2004.

[14]  See Adv. Proc. 03-6029 and judgment entered thereon (dkt #42) on July 7, 2004.

[15]  See Adv. Proc. 03-6037 and judgment entered thereon (dkt #86) on October 16, 2006.  In chronological context, this dispute was designed to determine any additional amount which the Debtor would have been required to pay [$21,800] in order to comply with 11 U.S.C. §1325(a)(4) and obtain confirmation of a proposed Chapter 13 plan.

the Jacksons' complaint, they successfully proved that the referenced 2000 Ford F-250

pickup[16] and certain items of personal property referenced as the "Best Buy

---

[16]   In adversary no. 03-6037, the Court made the following factual findings regarding the 2000 Ford F-150 truck:

2000 Ford F-250 Truck.

14.   On July 10, 2002, the Debtor was the owner of a 1999 Ford F-250 pickup free and clear of any recorded lien or encumbrance.

15.   On or about July 10, 2002, the Debtor transferred the 1999 Ford pickup to Donald T. Herman for the purchase price of $1.00 and a new certificate of title in Mr. Herman's name was issued on July 19, 2002.

16.   According to the Defendants, this was done in recognition of numerous checks flowing from Mr. Herman to the Debtor which represented payments toward the 1999 pickup at a time in which they were not married to each other, although the referenced checks do not consistently reflect such applicability and there was no written agreement between the Debtor and Mr. Herman regarding payment of the applicable promissory note or ownership of the 1999 pickup.

17.   On or about September 9, 2002, the Debtor and Mr. Herman, now married, went to Glaspie Cars & Trucks, Inc. ("Glaspie") and a 2000 Ford F-250 pickup, VIN # EFTNW20S5YMA57451 (the "2000 Ford F-250"), was purchased for $20,900.00.

18.   The 1999 Ford F-250 was traded to Glaspie for an $11,700.00 credit toward the purchase price of the 2000 pickup.

19.   The net sales price due to Glaspie following the application of the trade-in credit was $9,951.35.

20.   The $9,951.35 was paid by the Debtor by charging such sum on her Bank of America VISA card, account # xxxx-xxxx-xxxx-1034.

21.   The Debtor testified that she used her VISA card to pay for the truck because she had a lower rate of interest on that card than could be obtained elsewhere by Donald T. Herman.

22.   The 2000 Ford F-250 pickup was titled in the name of Donald T. Herman.

23.   The testimony of the Defendants regarding the applicability of cash payments tendered by Herman to the Debtor subsequent to the purchase of the 2000 pickup is not credible.

24.   At the time of the commencement of the Debtor's bankruptcy case, the value of the 2000 Ford F-250 pickup was $20,000.00.

Merchandise"[17] constituted property of the Debtor's bankruptcy estate.

_____

The legal conclusions as to the pickup were as follows:

2000 Ford F-250 Truck.

81.     The name on a certificate of title to an automobile is not conclusive of ownership.  Evidence of the name in which an automobile is registered raises only a presumption of ownership. A presumption is not evidence and vanishes when positive evidence to the contrary is introduced. *Vibbert v. PAR, Inc.*, ___ S.W.3d ___, 2006 WL 737429 at *3 (Tex. App.— El Paso, Mar. 23, 2006, no pet.), citing *Tyler Car & Truck Center v. Empire Fire & Marine Ins. Co.,* 2 S.W.3d 482, 485 (Tex. App. — Tyler 1999, pet. denied).

82.     Notwithstanding the manner in which it was titled, the Debtor owns, at a minimum, a joint interest in the 2000 Ford F-250 pickup, free and clear of any recorded lien or encumbrance.

83.     The 2000 Ford F-250 pickup constituted property of the bankruptcy estate of the Debtor on the date that her bankruptcy case was commenced.

84.     The Plaintiffs have failed to establish any legal basis under which Donald T. Herman can be held liable for the reasonable rental value of the use of the 2000 Ford F-250 pickup.

[17]  This moniker utilized in the Findings of Fact and Conclusions of Law issued in adv. proc. 03-6037 references items of personal property purchased by the Debtor from Best Buy on either August 30, 2002 or October 19, 2002, and included: (1) a laptop computer; (2) a laptop computer bag; (3) a 300-watt power converter; and (4) a 13" TV-VCR combination.  In that adversary, the Court made the following factual findings regarding the Best Buy Merchandise:

The Laptop Computer and Other "Best Buy" Merchandise.

32.     The Plaintiffs seek a declaration that certain items of personal property purchased by the Debtor from Best Buy (thus hereafter referenced as the "Best Buy Merchandise") on either August 30, 2002 or October 19, 2002, including:

- a laptop computer;
- a laptop computer bag;
- a 300-watt power converter; and
- a 13" TV-VCR combination.

constitutes property of the Debtor's bankruptcy estate.

33.     The Debtor secured a line of credit at Best Buy in August, 2002 in the amount of $3,100.00.

34.     The Debtor bought the computer and bag on August 30, 2002, and its value at the time of sale was approximately $1,750.00.

35.     The Debtor bought the converter and the TV-VCR on October 19, 2002, and its value at the time

## Discussion

Though somewhat disjointed, the evidence presented in support of Jacksons'
complaint objecting to Herman's discharge can be subdivided into three general subject
areas: (1) the disposition of the 2000 Ford F-150 truck and the Best Buy Merchandise (the
"adversary assets") which were addressed in the earlier declaratory judgment issued in
adversary no. 03-6037; (2) the two cash withdrawals totaling $13,000 that Herman claims
was spent for the improvement of her homestead in the month prior to the bankruptcy
filing; and (3) the post-petition activities of the Debtor.  The Court will begin with the
latter.

Without any legal analysis and without recitation of any authority, the Jacksons
contend that Herman's post-petition conduct in this case warrants the denial of her
discharge under virtually every subsection of §727(a).  The Jacksons reference the delay

of sale was approximately $210.00

36.    The Best Buy Merchandise was purchased on the credit card belonging to the Debtor and no
party other than the Debtor tendered any payment for any of the Best Buy Merchandise.

The legal conclusions as to the Best Buy Merchandise were as follows:

The Laptop Computer and Other "Best Buy" Merchandise.

92.    The use of the Best Buy Merchandise by Donald Herman did not transfer ownership of the
merchandise to him.

93.    The Best Buy Merchandise constituted property of the bankruptcy estate of the Debtor on the
date that her bankruptcy case was commenced.

94.    The value of the Best Buy Merchandise as of the commencement of the Debtor's bankruptcy
case was $1,800.00.

in the presentation of the Debtor's schedules until January 21, 2003, and the corresponding delay in the initial meeting of creditors that the missing schedules caused. They reference the delay arising from the fact that the Debtor, upon the advice of her former attorney, converted her Chapter 13 case to Chapter 7 as a trial tactic during a disasterous stay hearing in the early days of her case and then, upon procuring more talented counsel, vacated that conversion and proceeded to attempt to confirm a Chapter 13 plan.  Finally, the Jacksons complain that the Debtor never fulfilled her obligation to tender the $21,800 assessment for the adversary assets, even though, in reality, she was never required to do so since she was never successful in confirming a Chapter 13 plan.

While these developments undoubtedly frustrated the Jacksons in their pursuit of the indebtedness owed to them, such occurrences simply do not provide any statutory basis for the denial of Herman's discharge under §727.  All of these actions were either done with the approval of the Court under proper procedures and upon proper notice, or were otherwise proper strategies or decisions taken by the Debtor, given the developing circumstances of the case.  None of the asserted actions constituted improper conduct by the Debtor or evidenced the requisite mental state necessary to deny a discharge.  None of the actions and/or omissions precluded or unduly interfered with the proper administration of the case.  Though certainly post-petition actions or omissions can present a predicate for the denial of a debtor's discharge under proper circumstances,[18]

---

[18] *See, e.g.*, §727(b)(2)(B) punishing the transfer, removal, destruction or concealment of property of the estate with the requisite intent to hinder, delay or defraud.

the Jacksons have failed to present sufficient evidence of any such conduct by the Debtor.

The remaining two factual scenarios presented by the Jacksons in support of their complaint actually raise three distinct issues. The first consideration involves Herman's alleged concealment of the adversary assets — the 2000 Ford F-150 truck and the Best Buy Merchandise which were addressed in the earlier declaratory judgment action under adversary no. 03-6037. The second issue pertains to Herman's act of taking two cash withdrawals totaling $13,000 in the month prior to the bankruptcy filing. The final issue involves her alleged concealment of those cash withdrawals. The Jacksons contend that these actions, including the Court's prior findings that the unscheduled F-150 truck and Best Buy Merchandise constituted property of the bankruptcy estate, mandate the denial of the Debtor's discharge under §727(a)(2) and (a)(4).[19]

*Section 727(a)(2)(A).*

In order to establish grounds for denial of a discharge under §727(a)(2)(A),[20] the

---

[19] See *Joint Pre-Trial Order* ¶¶ 1.02 - 1.05. A final pretrial order supersedes all prior pleadings and thereafter "control[s] the subsequent course of the action." FED. R. CIV. P. 16(e). That includes the incorporation of new causes of actions not contained in earlier pleadings. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474, 127 S.Ct. 1397, 1409, 167 L.Ed.2d 190 (2007), *citing Syrie v. Knoll Int'l*, 748 F.2d 304, 308 (5th Cir. 1984) ["[I]ncorporation of a [new] claim into the pre-trial order ... amends the previous pleadings to state [the new] claim"]. *See also, Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1028 (5th Cir. 1992).

The pre-trial order also referenced §727(a)(5), (a)(6) and (a)(7). However, the Jacksons failed to demonstrate any behavior by the Debtor that warrants a denial of discharge under §727(a)(5) or (a)(6) and the Jacksons abandoned at trial their claims asserted §727(a)(7) after acknowledging that none of the actions referenced by the complaint were taken by the Debtor "in connection with another [bankruptcy] case."

[20] §727(a)(2) provides that:

Jacksons must demonstrate by a preponderance of the evidence that there was: (1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; and (4) performed with an intent to hinder, delay or defraud a creditor or an officer of the estate. *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

As to each of the three considerations, there is little doubt that the first three factors of the §727(a)(2)(A) analysis are satisfactorily demonstrated by the evidence. It is uncontested that the adversary assets and the two cash transfers are not listed in either the Debtor's original or amended schedules. It is further undisputed that the actions taken in reference to these assets occurred within a year, indeed mostly within three months, of the filing of the Debtor's bankruptcy petition. The cash clearly belonged to the Debtor in the last few weeks before the bankruptcy filing and the Debtor's withdrawal of such cash assets on the eve of bankruptcy clearly constitutes a transfer under the Code.[21] As to the

---

The court shall grant the debtor a discharge unless —

    (2)  the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —

        (A)  property of the debtor, within one year before the date of the filing of the petition; or

        (B) property of the estate, after the date of the filing of the petition.

[21]  See §101(54) which defines a "transfer" in the broadest possible terms: ". . . each mode, direct, or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." "Essentially a 'transfer' is any disposition of an interest in property which includes a transfer of possession, custody or control even if there is no transfer of title and which also includes deposits to, withdrawals from, and transfers between bank accounts or similar accounts." *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 917-18 (Bankr. D. Utah 2006).

adversary assets, the Court previously held in the earlier adversary that Herman retained

an interest in the truck, notwithstanding the transfer of title to her non-debtor spouse, and

that the Best Buy Merchandise also belonged to the debtor.[22]

The failure of the Debtor to disclose her interest in the adversary assets and her

transfer of the cash assets is each singularly sufficient to constitute a concealment.

Concealment for the purposes of §727(a)(2) does not require actual physical secretion of

the asset.  As one court noted in its review of the applicable jurisprudence regarding

concealment in this context:

> [C]oncealment suffices as a prohibited act even without a prohibited
> transfer. . . .  It [concealment] covers other conduct, such as placing assets
> beyond the reach of creditors or withholding knowledge of the assets by
> failure or refusals to divulge owed information.  A concealment for
> purposes of §727(a)(2) consists of failing or refusing to divulge information
> to which creditors were entitled.  A concealment will be found when a
> debtor purports to transfer an asset, making it appear as if he no longer
> owns it, but he in fact retains an interest in the asset.  Concealment includes
> preventing discovery, fraudulently transferring or withholding knowledge
> or information required by law to be made known.

*Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 918 (Bankr. D. Utah

2006)(citations and quotations omitted).  Thus, Herman concealed both the adversary

assets and her cash transfers as well.

---

[22]  Thus, the fact that the adversary assets became subject to the trustee's administrative powers
is not dispositive since proof of harm to the estate is not a required element under §727(a). *Butler*,377
B.R. at 917;  *Womble v. Womble (In re Womble)*, 289 B.R. 836, 855 (Bankr. N.D. Tex. 2003).

The real issue, therefore, regarding the Debtor's entitlement to a discharge relates to whether these cash transfers and the subsequent concealment of those transfers, as well as the concealment of the adversary assets, were performed by the Debtor with an intent to hinder, delay or defraud.  As an initial response on that issue, Herman contends that, at least as to the adversary assets, the Jacksons' failure to obtain affirmative findings of a fraudulent intent in the earlier adversary proceeding bars them from seeking such findings in this adversary through the principles of res judicata or collateral estoppel.  Herman contends that she is thereby insulated from liability under §727(a) for any action involving the adversary assets.

Though the doctrine of issue preclusion applies to the factual findings issued in adversary no. 03-6037 as to these referenced assets, the doctrine does not extend to preclude a finding of a fraudulent intent by the Debtor in this circumstance.  Although there were certain allegations of fraudulent transfer asserted in the earlier declaratory judgment action as to other assets, the issue of the Debtor's fraudulent intent as to the 2000 Ford F-150 and the Best Buy Merchandise was never reached.  It did not have to be reached in that adversary because the Court concluded that no transfer of those particular assets had actually ever been made.  The Court specifically concluded that, as to the truck, the notation of Donald Herman on the title to the vehicle raised only a presumption under Texas law and that the evidence had demonstrated that "[n]otwithstanding the manner in which it was titled, the Debtor owns, at a minimum, a joint interest in the 2000 Ford F-

250 pickup, free and clear of any recorded lien or encumbrance."[23]   As to the Best Buy

Merchandise, the Court also found that there had been no transfer of those assets to

Donald Herman.[24]   Because there had been no transfer of those designated assets, they

constituted property of the Debtor's bankruptcy estate upon the filing of her voluntary

petition and a declaratory judgment regarding those assets was rendered accordingly.[25]

Thus, because the issue of any fraudulent intent was never reached in the prior action, it

was not "actually litigated" and cannot appropriately preclude the Jacksons' attempt to

litigate the intent issue in this proceeding.[26]

   It is widely recognized that a plaintiff must demonstrate an actual intent to hinder,

delay, or defraud creditors  to prevail on a §727(a)(2) claim — a constructive intent is

insufficient.  *Chastant,* 873 F.2d at 91; *Martin Marietta Matl's Southwest, Inc. v. Lee*, 309

B.R. 468, 481 (Bankr. W.D. Tex. 2004).  However, "[c]ourts are reluctant to accept a

debtor's self-serving statement of her intent as the best evidence of that intent."  *Fiala v.*

*Lindemann (In re Lindemann)*, 375 B.R. 450, 466 (Bankr. N.D. Ill. 2007).  Thus, "a court

may infer such actual intent from the circumstances of the debtor's conduct."  *NCNB*

---

[23] *Findings of Fact and Conclusions of Law* filed in adv. proceeding 03-6037 on October 16, 2006 (dkt #85) at p. 11.

[24] *Id.* at p. 13.

[25] Plaintiffs' Ex. 64.

[26] *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 345 (5th Cir. 1982) ["collateral estoppel applies only to issues of fact or law necessarily decided by a prior court"]; *Continental Airlines, Inc. v. American Airlines, Inc.*, 824 F.Supp. 689, 707 (S.D. Tex. 1993) [holding that an issue had to be finally decided in the prior action in order to invoke collateral estoppel].

*Texas Nat'l Bank v. Bowyer (In re Bowyer)*, 916 F.2d 1056, 1059 (5th Cir. 1990) *rev'd*,

932 F.2d 1100 (5th Cir. 1991).  Such an inference may be properly drawn by looking to

several factors:

> (1) the lack or inadequacy of consideration;
>
> (2) the family, friendship or close associate relationship between the parties;
>
> (3) the retention of possession, benefit, or use of the property in question;
>
> (4) the financial condition of the party sought to be charged both before and after
>     the transaction in question;
>
> (5) the existence or cumulative effect of the pattern or series of transactions or
>     course of conduct after the incurring of debt, onset of financial difficulties,
>     or pendency or threat of suits by creditors; and
>
> (6) the general chronology of the events and transactions under inquiry.

*Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 702 (5th Cir. 2003).[27]

The Jacksons contend that Herman engaged in these cash transfers and in the

concealment of assets with actual intent to hinder, delay or defraud because she knew that

execution upon the now-finalized state court judgment by the Jacksons was imminent.

However, the Jacksons failed to prove by a preponderance of the evidence okthat Herman

---

[27]  The factors cited above are essentially restatements of some of the badges of fraud
incorporated into the Uniform Fraudulent Transfer Act.  In examining these badges of fraud in a
§727(a)(2)(A) context, some courts have noted that the badges of fraud can be categorized into three
species: (1) those that are inherently indicative of fraudulent intent; (2) those that suggest a motive other
than economic rationality, and (3) those that are only relevant because of their timing.  *See Lee*, 309 B.R.
at 486, n. 30 (*citing Murphy v. Crater (In re Crater)*, 286 B.R. 756, 764-65 (Bankr. D. Ariz. 2002)).
Only factor 3 of those identified by the Fifth Circuit is inherently indicative of a fraudulent intent.
Factors 1 and 2 are only indicative of the possibility that the transaction was not economically rational,
and factors 4, 5, and 6 are only relevant because of their timing.  While a lack of economic motivation
and timing considerations may, in sum, persuade a court of a debtor's intent to hinder, delay, or defraud
her creditors, they alone do not mandate such a finding.

had actual knowledge of the entry of that final judgment and its impact.  Because the state court judgment against Herman became final due to the Jacksons' non-suit of the remaining issue in dispute following appellate remand, there was no entry of a final dispositive document in the state court case.  Final judgment occurred by operation of law without formal notice from the court after months of delay and uncertainty about when the state court litigation would be reinstituted.  Though her feigned ignorance about any developments in the state court litigation strains credibility, there is no direct evidence that she knew precisely when her non-exempt assets would become susceptible to seizure. While one certainly might have reasonable suspicions regarding the state of Herman's knowledge, including her general awareness of her susceptibility to available post-judgment remedies, the evidence regarding her knowledge of the status of the state court litigation is insufficient to satisfy the actual intent element under §727(a)(2).

However, with regard to inferring actual intent from the attendant circumstances, the evidence is more than sufficient to establish by a preponderance of the evidence that the adversary assets were concealed by the Debtor with an intent to hinder, delay or defraud creditors.[28]  The Debtor's primary defense on this point is that all references to the adversary assets were omitted from her schedules because she subjectively thought that such assets belonged to her husband.  Yet the expressed premise for that belief — the

---

[28]  It should be noted that there is a "presumption of fraudulent intent when a debtor transfers property to relatives. . . . [O]nce this presumption attaches, the burden shifts to the debtor to demonstrate that [s]he lacked fraudulent intent.  *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566-66 (5th Cir. 2005). Herman has certainly failed to carry any such burden.

-16-

assertion that Mr. Herman had paid so much money to her that she was compelled to recognize his ownership interest — was rejected by the Court as lacking credibility in the previous adversary.  The other facts are more firmly established.

The Debtor owned a 1999 truck that she allowed Mr. Herman to drive.  She transferred title to that vehicle to Mr. Herman in July 2002 for virtually no consideration.[29]  Less than two months later, she traded that vehicle to purchase a 2000 Ford F-150, and she personally paid the remaining purchase price of $9,951.35 on her Bank of America credit card account which was not subsequently paid prior to her bankruptcy.[30]  However, she titled this $20,000 vehicle in Mr. Herman's name only. Upon the filing of her bankruptcy case three months later, Herman made no mention of this vehicle or of this transaction in her schedules and statements.  She did not referenced it as a gift to a family member within one year on her statement of financial affairs.  It was not listed on either her original or her amended Schedule B as an account receivable or as a liquidated debt owing to her, notwithstanding the fact that Herman knew that she had provided virtually all of the funds necessary to purchase this $20,000 vehicle in a transaction occurring less than 60 days prior to the petition date.  The fact that Herman tendered the exclusive use of the vehicle to her husband is meaningless.  This was

---

[29]  The Court found in the earlier litigation that any assertion by the Debtor that payments were being made to her by Mr. Herman in repayment of the purchase price of either truck was without credibility.

[30]  The aggregate unpaid balance on that Bank of America credit card account as of the filing date was $20,656.63

information to which Herman's creditors were entitled and which Herman was obligated to provide.  *Faden v. Ins. Co. of North America (In re Faden)*,  96 F.3d 792, 795 (5th Cir. 1996) ["The burden is on the debtors to complete their schedules accurately"]; *Calder v. Job (In re Calder)*, 907 F.2d 953, 956 (10th Cir. 1990) [finding that "those who seek shelter of the Bankruptcy Code must provide complete, truthful and reliable information"] (quotations omitted).  Yet, without the diligent discovery efforts of the Jacksons during this bankruptcy case, these assets would have never become estate property.  Indeed, this transaction would never have become known at all.  That is not consistent with a debtor's duty to disclose assets and constitutes an actual intent to hinder, delay or defraud creditors.  Accordingly, the concealment of these adversary assets by Herman warrants the denial of her discharge under §727(a)(2).

For the same general reasons, the Debtor's concealment of her cash transfers precludes her entitlement to a Chapter 7 discharge.  Though the Debtor could possibly have defended the actual acts of converting her non-exempt cash into protected homestead improvements,[31] she has presented no viable explanation for her failure to reveal those acts in her statement of financial affairs.  Herman was under an absolute obligation to disclose that conversion of assets to her creditors so that they might have a

---

[31] Considered in isolation, the conversion of non-exempt property to exempt property is insufficient to preclude entitlement to a discharge under §727 because the Bankruptcy Code allows a debtor to make use of the exemptions to which she is entitled.  *See, e.g., NCNB Texas Nat'l Bank v. Bowyer (In re Bowyer) [Bowyer II)*, 932 F.2d 1100, 1102 (5th Cir. 1991); *Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)* , 309 B.R. 468, 483 (Bankr. W.D. Tex. 2004).  Though perhaps the transfers themselves were defensible, the concealment of those transfers is not.

full and complete opportunity to investigate the propriety of those actions.  As Judge John

Akard once eloquently described this obligation:

> Bankruptcy law presupposes that one who seeks its protection will deal
> honestly and fairly with creditors by furnishing a complete and accurate
> schedule of assets.  The trustee and creditors are entitled to honest and
> accurate signposts on the trail showing what property has passed through
> the debtor's hands during the period prior to bankruptcy.  A debtor has a
> paramount duty to consider all questions posed on statement or schedules
> carefully and see that question is answered completely in all respects.
> Additionally, a debtor has an ongoing obligation to disclose all transfers,
> attempted transfers, unlisted assets and other relevant information. . . .  If a
> debtor is uncertain as to whether certain property is legally required to be
> included in the petition, the debtor's duty is to disclose the assets so that the
> question may be resolved.

*Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 503 (Bankr. N.D. Tex.

1991) (citations and quotations omitted).

However, that duty was not fulfilled by Herman with regard to the two transfers.

They were not listed as payments to creditors within 90 days of the petition date in

response to question 3 on her statement of financial affairs.  Neither were they listed as

other transfers of assets in response to question 10 in that statement.  These were not

ordinary-course payments.  These withdrawals depleted Herman's bank account to a level

substantially below that which she had historically maintained.  They were applied to the

creation of new homestead improvements that the Debtor observed (and likely enjoyed)

every day.  Further, the transfers each occurred within a month prior to the filing of her

bankruptcy petition.  Thus, any assertion by Herman that she innocently or inadvertently

omitted any reference to this significant diversion of cash is simply not credible and,

despite the fact that the transfers could perhaps be protected from reversal, the

circumstances establish that Herman decided to ensure such a result by concealing her

appropriation of that cash which otherwise would have inured to the benefit of the

bankruptcy estate.  That concealment, again brought to light only because of the diligence

of the Jacksons, constituted a significant failure by Herman to fulfill her "express,

affirmative duty to disclose all assets," *Superior Crewboats, Inc. v. Primary P & I*

*Underwriters (In re Superior Crewboats, Inc.)*,  374 F.3d 330, 335 (5th Cir. 2004), and

the totality of circumstances surrounding that concealment establishes an actual intent to

hinder, delay or defraud creditors.  Accordingly, the concealment of the cash transfers by

Herman constitutes an additional foundation for the denial of her discharge under

§727(a)(2).

*Section 727(a)(4)(A).*[32]

     The Jacksons also offer Herman's failure to disclose all of her assets and pre-

petition transfers as a foundation to deny her discharge under §727(a)(4)(A) as a knowing

---

[32]  Section 727(a)(4)(A) provides that:

The court shall grant the debtor a discharge unless —

     (4) the debtor knowingly and fraudulently, in or in connection with the case —

          (A) made a false oath or account . . . .

and fraudulent false oath issued by the Debtor in this case.[33]  "The purpose of

§727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the Debtor

provides reliable information to those who have an interest in the administration of the

estate.  Thus, complete financial disclosure is a condition precedent to the privilege of

discharge." *Lindemann*, 375 B.R. at 469 (citations and quotations omitted).  In order to

prevail on a §727(a)(4)(A) claim, a plaintiff must prove that: "(1) the debtor made a

statement under oath; (2) the statement was false; (3) the debtor knew the statement was

false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was

material to the bankruptcy case." *Sholdra v. Chilmark Financial, LLP (In re Sholdra)*,

249 F.3d 380, 382 (5th Cir. 2001), *citing Beaubouef v. Beaubouef (In re Beaubouef)*, 966

F.2d 174, 178 (5th Cir.1992).  "False oaths sufficient to justify the denial of discharge

include (1) a false statement or omission in the debtor's schedules; or (2) a false statement

by the debtor at the examination during the course of the proceedings." *Id*.  A false

statement or omission is material "if it bears a relationship to the debtor's business

transactions, or if it concerns the discovery of assets, business dealings, or the existence

or disposition of the debtor's property." *Id*.

The Jacksons have successfully demonstrated by a preponderance of the evidence

that Herman's omission of any disclosure regarding the vehicle purchased with her funds

---

[33]  As with the earlier claim, the Jacksons' claim under §727(a)(4) was properly raised by its inclusion in ¶ 1.03 and ¶ 1.05 of the Joint Pre-Trial Order.  As cited earlier, the terms of the joint pre-trial order supersede the pleadings.  *See supra* note 19.

but titled in her husband's name and her failure to reveal the significant diversion of cash

into her homestead three weeks prior to the bankruptcy petition each constitute a false

oath under §727(a)(4).  It is uncontested that omitted items from a debtor's statements and

schedules render the sworn certification accompanying those documents as a false

statement made under oath.  These particular omissions were material because they dealt

with the existence and/or the disposition of the Debtor's property.  With regard to the

knowledge element, "[k]nowledge that a statement is false can be evidenced by a

demonstration that the debtor knew the truth, but nonetheless failed to give the

information or gave contradictory information." *Ayers v. Babb (In re Babb)*, 358 B.R.

343, 355 (Bankr. E.D. Tenn. 2006), *quoting Hamo v. Wilson (In re Hamo)*, 233 B.R. 718,

725 (B.A.P. 6th Cir.1999).  The evidence demonstrates that Herman knew that she had

contributed the entire purchase price of the 2000 pickup and that she had depleted her

checking account for homestead improvements only a few weeks before filing.

As to whether the omissions were the result of a fraudulent intent, the Court has

carefully reviewed the circumstantial evidence surrounding these transactions and the

entire pattern of the Debtor's conduct relating thereto as set forth in its discussion under

§727(a)(2).  There are too many omissions from significant transactions occurring only

weeks prior to the bankruptcy filing to support the supposition that these omissions were

the result of honest mistake or inadvertence.  Concerns expressed in earlier adversaries

regarding Herman's credibility remained unresolved in this adversary. The idea that

Herman was oblivious to the progress of the state court litigation and had no concept of what remedies might be imposed against her upon the entry of judgment is belied by the diligent manner in which she sought to avoid the assessment of liability for her unpaid attorney fees.  The idea that it was mere coincidence that her unusual drawdown on her bank accounts occurred within a month of filing and near the very time that the Jacksons began to execute on their judgment simply does not ring true.  To reveal the vehicle purchase and the conversion of non-exempt assets at that point would have undoubtedly meant more investigation and intrusion.  Rather than fully disclose these transactions and defend the validity of them, Herman attempted to short-circuit that process and avoid any further examination.  That is not how the bankruptcy process works and these circumstances convince the Court that the omissions were made with a fraudulent intent. Thus, the Debtor's discharge must be denied under §727(a)(4)(A) as well.

## Conclusion

"Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential because the schedules serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true" *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005), *citing Beaubouef v. Beauboeuf (In re Beauboeuf)*, 966 F.2d 174, 179 (5th Cir. 1992) (citations and quotations omitted). "It is the debtor's duty to disclose everything, not to make decisions about what

they deem important enough for parties in interest to know." *Butler*, 377 B.R. at 923.

Because the Debtor usurped these principles, she should not receive the primary benefit

afforded by this Court.  Accordingly, the relief requested in the Jacksons' complaint is

granted and the discharge of debts for the benefit of Verna Kay Herman shall be denied.

This memorandum of decision constitutes the Court's findings of fact and

conclusions of law[34] pursuant to FED. R. CIV. P. 52, as incorporated into adversary

proceedings in bankruptcy cases by FED. R. BANKR. P. 7052.  An appropriate judgment

will be entered consistent with this opinion.

Signed on 02/24/2009

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[34] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

-24-